1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 04, 2020

SEAN F. McAVOY, CLERK

3

4

5

# UNITED STATES DISTRICT COURT

6

## EASTERN DISTRICT OF WASHINGTON

7

| | |
|---|---|
| ERICA H.,[1] | No. 1:19-cv-03269-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 16 |

8

9

10

11

12

13      Before the Court are the parties' cross-motions for summary judgment.  ECF

14  Nos. 14, 16.  The parties consented to proceed before a magistrate judge.  ECF No.

15  8.  The Court, having reviewed the administrative record and the parties' briefing,

16

17  _____

18  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

19  identifies them by only their first names and the initial of their last names.  *See*

20  LCivR 5.2(c).

ORDER - 1

1  is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

2  motion, ECF No. 14, and grants Defendant's motion, ECF No. 16.

### JURISDICTION

4  The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

### STANDARD OF REVIEW

6  A district court's review of a final decision of the Commissioner of Social

7  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

8  limited; the Commissioner's decision will be disturbed "only if it is not supported

9  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

10  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

11  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

12  (quotation and citation omitted).  Stated differently, substantial evidence equates to

13  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

14  citation omitted).  In determining whether the standard has been satisfied, a

15  reviewing court must consider the entire record as a whole rather than searching

16  for supporting evidence in isolation. *Id.*

17  In reviewing a denial of benefits, a district court may not substitute its

18  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

19  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

20  rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

ORDER - 5

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)).  When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. § 416.935(a).  In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of  the remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability.  *Id.*  If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to

ORDER - 6

disability.  *Id.*  The claimant has the burden of showing that drug and alcohol

addiction is not a contributing factor material to disability.  *Parra*, 481 F.3d at 748.

Social Security Ruling ("SSR") 13-2p provides guidance for evaluating

whether a claimant's substance use is material to the disability determination.  SSR

13-2p, 2013 WL 621536, at *3 (Feb. 20, 2013).  It instructs adjudicators to "apply

the appropriate sequential evaluation process twice.  First, apply the sequential

process to show how the claimant is disabled.  Then, apply the sequential

evaluation process a second time to document materiality[.]"  *Id.* at *6.

## ALJ'S FINDINGS

On June 21, 2016, Plaintiff applied for Title XVI supplemental security

income benefits alleging an amended disability onset date of June 21, 2016.[2]  Tr.

238-47.  The application was denied initially, and on reconsideration. Tr. 119-32;

Tr. 141-54.  Plaintiff appeared before an administrative law judge (ALJ) on May

24, 2018.  Tr. 36-70.  On September 17, 2018, the ALJ denied Plaintiff's claim.

Tr. 15-35.

--------

[2] Plaintiff also applied for Title II disability insurance benefits, but the Title II

request for hearing was dismissed when Plaintiff amended her alleged onset date to

June 2, 2016, as the new alleged onset date fell after her December 31, 2014 date

last insured.  Tr. 18, 21.

ORDER - 7

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2012.  Tr. 21.  At step two, the ALJ found that Plaintiff has the following severe impairments:  psychosis secondary to substance addiction, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder.  *Id.*

At step three, the ALJ found Plaintiff's impairments, including the substance use disorders, equal Listings 12.04 and 12.15.  Tr. 22.  The ALJ found if Plaintiff stopped using substances, none of her impairments or combination of impairments would meet or medically equal the severity of a listed impairment.  Tr. 25.  The ALJ then concluded that if Plaintiff stopped using substances, Plaintiff would have the RFC to perform "less than a full range of medium work with the residual functional capacity to perform work at all exertional levels," with the following limitations:

> [Plaintiff] has no limitations regarding the ability to understand, remember or apply information that is simple, routine, and repetitive, commensurate with 1-3 step tasks, commensurate with SVP 2 skill. Regarding interaction with others, [Plaintiff] would work best in an environment in proximity to, but no close cooperation, with coworkers, supervisors, and should work in an environment away from the public.  Regarding the ability to concentrate, persist, and maintain pace, [Plaintiff] has the ability with legally required breaks, to focus on work activities and stay on task at a sustained rate; complete tasks in a timely manner; sustain an ordinary routine; regularly attend work; and work a full day without needing more than the allotted number or length of rest periods.  Regarding the ability to adapt or manage, [Plaintiff] would work best in an environment that is routine and predictable, but does have the ability to respond

ORDER - 8

appropriately, distinguish between acceptable and unacceptable work performance, and take appropriate precautions.

Tr. 25-26.

At step four, the ALJ found Plaintiff is unable to perform any of her past relevant work.  Tr. 27.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as field crop farm worker, kitchen helper, and small products assembler.  Tr. 28.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 30.

On September 20, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly determined that Plaintiff's substance use disorder is a material contributing factor to the determination of disability;

ORDER - 9

2.  Whether the ALJ properly evaluated the medical opinion evidence; and

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 14 at 2.

### DISCUSSION

**A. Drug and Alcohol Abuse (DAA)**

Plaintiff challenges the ALJ's finding that Plaintiff's substance abuse materially contributed to her limitations. ECF No. 14 at 9-15. Social Security claimants may not receive benefits where DAA is a material contributing factor to disability. 20 C.F.R. § 416.935(b); 42 U.S.C. § 423(d)(2)(c). DAA is a material contributing factor if the claimant would not meet the SSA's definition of disability if the claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b). Plaintiff has the burden of showing that DAA is not a material contributing factor to disability. *See Parra*, 481 F.3d at 748.

The ALJ found Plaintiff's substance use is a material contributing factor to her disability. Tr. 25-29. Plaintiff argues the ALJ failed to properly analyze her substance use according to SSR 13-2p, including failing to properly consider 1) a treating medical opinion that reflected that Plaintiff had disabling limitations even without substance use; and 2) whether DAA was material to Plaintiff's co-occurring mental impairments. ECF No. 14 at 9-15. As discussed *infra,* the ALJ's rejection of Dr. Ballasiotes' opinion was supported by substantial evidence.

ORDER - 10

1    While Plaintiff argues there is a lack of evidence demonstrating Plaintiff's

2 mental health symptoms showed improvement with sobriety, the ALJ relied on the

3 opinion of Dr. Winfrey, as well as medical records demonstrating improvement in

4 Plaintiff's symptoms during periods of sobriety.  Tr. 25-29, 43-47, 499, 524, 622,

5 634, 638, 1682, 2027.  Nancy Winfrey, Ph.D., a nonexamining medical expert,

6 testified at Plaintiff's hearing and opined Plaintiff's conditions would equal a

7 listing when including her substance use, Tr. 43-45, but Plaintiff's conditions do

8 not equal a listing when Plaintiff is not using substances, Tr. 45.  Dr. Winfrey

9 opined Plaintiff's substance use is a material factor, and Plaintiff is capable of

10 simple, low-stress work with limitations in social functioning when she is not using

11 substances.  Tr. 42, 45-46.

12    Dr. Winfrey testified that during "short periods" at the end of detox

13 treatment, Plaintiff's functioning improved.  Tr. 43.  Dr. Winfrey testified Plaintiff

14 generally detoxed only for "days," not "weeks or months," that even a month after

15 the last use, substances, including cannabis, can impact an individual's

16 functioning, and that Plaintiff looked "somewhat better" when she was sober.  Tr.

17 49.  Dr. Winfrey testified Plaintiff demonstrated improvement in June 2017 when

18 she was getting released from jail, after a one-month period of sobriety, because

19 Plaintiff reported reading her Bible and having no hallucinations or delusions, and

20 she had a normal mood/affect.  Tr. 52-53 (citing Tr. 2027).  In July 2017, while in

inpatient treatment, Plaintiff reported doing exceptionally well with improved symptoms, Tr. 1488, until she began outpatient treatment, ran out of her medications, and again began using methamphetamine, Tr. 886-88. There are additional periods in the record when Plaintiff was incarcerated and/or receiving treatment during which she demonstrated improvement in her symptoms.

In June 2016, Plaintiff had some abnormalities on examinations, but also had multiple normal mental status examinations.  While in treatment, Plaintiff's provider found Plaintiff had become compliant with medication and had marked improvement in her functioning.  Tr. 512.  Plaintiff had a normal examination while engaging in the residential treatment program, Tr. 524, and was noted as stabilizing with medications, having a bright mood and pleasant affect, Tr. 1610. After being discharged from the residential program, Plaintiff visited an emergency department due to anxiety stemming from a lack of housing; during the visit, she again had a generally normal mental status examination.  Tr. 666.  In July 2016, while under a less restrictive alternative to treatment order (LRA), Plaintiff reported improvement in her symptoms, had a normal mental status examination, and was observed as organized and future-thinking.  Tr. 515, 517, 638.

In October 2017, while in residential treatment, Plaintiff was noted as enthusiastically embracing treatment, she was not observed having abnormal anger, mood, bizarre behaviors, paranoia, nor disorganized thoughts.  Tr. 1635,

ORDER - 12

1  1644.  In November 2017, while still in residential treatment, Plaintiff had

2  continued improvement, with normal eye contact, grooming, psychomotor activity,

3  memory, attention/concentration, speech, and she was cooperative and pleasant,

4  with no reported hallucinations.  Tr. 1309-10.  The provider noted Plaintiff was

5  doing very well.  *Id.*  While still in residential treatment, Plaintiff participated well

6  in group therapy in December 2017, Tr. 1202, 1211, and attended AA meetings

7  and socialized with others in January and February 2018.  Tr. 1997, 2001.

8      Plaintiff has not met her burden in proving DAA is not a material

9  contributing factor to her disability.  *See* SSR 13-2p.  The ALJ also noted Plaintiff

10  did not seek significant mental health treatment during multiple periods in the

11  relevant adjudicate timeframe, although she sought treatment for her physical

12  indications, which the ALJ found indicated Plaintiff did not need care for her

13  mental health symptoms.  Tr. 29.  While Plaintiff argues the ALJ improperly

14  considered Plaintiff's lack of mental health treatment as Plaintiff has limited

15  insight and judgment, ECF No. 14 at 11, the ALJ reasonably considered Plaintiff's

16  lack of mental health treatment given Plaintiff's treatment for her physical

17  conditions and evidence Plaintiff was willing to ask for help, Tr. 1682.  Further,

18  any error in the consideration would be harmless as the ALJ offered other

19  supported reasons to find DAA is a material contributing factor to Plaintiff's

20

disability.  *See Molina*, 674 F.3d at 1115.  Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinions of Angelo Ballasiotes, Pharm.D.,[3] and R.A. Cline, Psy.D.  ECF No. 14 at 15-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

---

[3] The ALJ misidentified Dr. Ballasiotes as having a Ph.D.  Tr. 24.  While Plaintiff argues the specific and legitimate standard applies, Dr. Ballasiotes is not an acceptable medical source.  *See* 20 C.F.R. § 416.913 (2013).

ORDER - 14

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[4]  However, an ALJ

---

[4] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 416.902 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 15

is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. § 416.913(d) (2013).[5]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

### 1.  Dr. Ballasiotes

On an undated questionnaire, Dr. Ballasiotes, a treating Pharm.D., opined that without substance use, Plaintiff had mild limitations in carrying out very short simple instructions; and moderate limitations in remembering locations and work-like procedures, understanding and remembering very short and simple instructions, performing activities within a schedule and maintaining regular attendance and being punctual, interacting appropriately with the public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behaviors and adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting, and concentrating, persisting or maintaining pace.  Dr. Ballasiotes opined Plaintiff

---

[5] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.920c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

had marked limitations in making simple work-related decisions, asking simple

questions or requesting assistance, being aware of normal hazards and taking

appropriate precautions, interacting with others, and adapting or managing oneself;

and severe/extreme limitations in understanding and remembering detailed

instructions, carrying out detailed instructions, maintaining attention and

concentration for extended periods, sustaining an ordinary routine without special

supervision, working in coordination with or proximity to others without being

distracted by them, completing a normal workday/workweek without interruptions

from psychologically based symptoms and performing at a consistent pace without

an unreasonable number/length of breaks, traveling to unfamiliar places or using

public transportation, setting realistic goals or making plans independently, and

understanding, remember or applying information.  Tr. 922-24.  Dr. Ballasiotes

further opined Plaintiff would be off-task more than 30 percent of the time in a 40-

hour work week, and she would miss four or more days per month if she worked

full-time.  Tr. 924.  The ALJ gave Dr. Ballasiotes' opinion little weight.  Tr. 24.

As Dr. Ballasiotes is not an acceptable medical source, the ALJ was required to

give germane reasons to reject the opinion.  *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Dr. Ballasiotes' opinion inconsistent with the other

opinions, including the testifying medical expert's opinion and findings from Dr.

VanFossen.  Tr. 24.  An ALJ may choose to give more weight to an opinion that is

ORDER - 17

1    more consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4) ("[T]he

2    more consistent a medical opinion is with the record as a whole, the more weight

3    we will give to that medical opinion."); *Nguyen*, 100 F.3d at 1464.  Relevant

4    factors when evaluating a medical opinion include the amount of relevant evidence

5    that supports the opinion, the quality of the explanation provided in the opinion,

6    and the consistency of the medical opinion with the record as a whole.

7    *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495

8    F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 416.927(c)(6) (assessing the extent to

9    which a medical source is "familiar with the other information in [the claimant's]

10    case record").

11        The ALJ observed that Dr. Ballasiotes provided an opinion consistent with

12    disability absent substance abuse, which was inconsistent with other medical

13    sources in the record, including Dr. VanFossen and Dr. Winfrey's opinions.  Tr.

14    24.  The ALJ specifically noted that Dr. Ballasiotes did not provide any discussion

15    or consideration of the impacts of substance abuse on Plaintiff's functioning.  *Id.*

16        As discussed *supra,* Dr. Winfrey opined Plaintiff's DAA use is a material

17    contributing factor to her disability.  Plaintiff contends the ALJ should not have

18    relied on Dr. Winfrey's testimony because she had not read the entire record.  Dr.

19    Winfrey testified she had reviewed the file before rendering her opinion but did not

20    "review every page in the Comprehensive Healthcare records" and she hoped she

ORDER - 18

1  had a "good enough summary."  Tr. 41.  The opinion of a nonexamining physician

2  may serve as substantial evidence if it is supported by other evidence in the record

3  and is consistent with it.  *Andrews*, 53 F.3d at 1041.  Here, Dr. Winfrey's

4  testimony demonstrates that she had sufficient knowledge of the record to form her

5  opinion.  Further, Dr. Winfrey had access to more records than the other providers,

6  including the records demonstrating improvement with sobriety.  Dr. Winfrey's

7  opinion that substance use is a material factor of Plaintiff's disability is supported

8  by substantial evidence for the reasons discussed herein.

9        The ALJ also relied on the opinions of Brian VanFossen, Ph.D., a reviewing

10  source, to reject Dr. Ballasiotes' opinion.  Tr. 24.  In July 2016, Dr. VanFossen

11  reviewed the records from examining source Dr. R.A. Cline, and diagnosed

12  Plaintiff with unspecified psychotic disorder, but found Dr. Cline's diagnoses of

13  cannabis use disorder and PTSD were not supported, and noted there may be

14  another substance use disorder given Dr. Cline's indication that substance-induced

15  psychosis should be ruled out.  Tr. 709.  Dr. VanFossen opined Dr. Cline's

16  assessment was generally consistent with the evidence, and opined Plaintiff's

17  limitations were not primarily due to substance abuse, but also noted that follow-up

18  was needed to assess Plaintiff during a longer period of sobriety, to determine if

19  Plaintiff was eligible for ongoing DSHS benefits.  Tr. 709.  In August 2017, Dr.

20  VanFossen again reviewed Dr. Cline's records and reviewed July 2017 records

ORDER - 19

from Comprehensive Healthcare, and diagnosed Plaintiff with unspecified

psychotic disorder, and noted methamphetamine use disorder should have been

considered.  Tr. 711.  Dr. VanFossen opined Dr. Cline's opinion that Plaintiff had

some mild limitations was an underestimate and moderate limitations better

reflected the evidence, but found it was unclear if Plaintiff's limitations were

primarily due to substance abuse.  *Id.*  Dr. VanFossen's opinion conflicts with Dr.

Ballasiotes given Dr. VanFossen's statements that it is unclear if Plaintiff's

limitations are primarily due to substance use, and that follow-up is needed during

a period of sobriety.  The conflicts between Dr. Ballasiotes' opinion and the

opinions of the reviewing doctors was a germane reason to reject Dr. Ballasiotes'

opinion.

Second, the ALJ found Dr. Ballasiotes' opinion consisted of a checkbox

form without sufficient explanation for the opinion.  Tr. 24.  The Social Security

regulations "give more weight to opinions that are explained than to those that are

not."  *Holohan*, 246 F.3d at 1202.  "[T]he ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory and

inadequately supported by clinical findings."  *Bray*, 554 at 1228.  Dr. Ballasiotes'

opinion consists entirely of checked boxes, and does not contain any explanation

for the opinion, any citations to objective evidence to support the opinion, nor does

ORDER - 20

1  it contain any diagnoses.  Tr. 922-25.  This was a germane reason to reject Dr.

2  Ballasiotes' opinion.

3          Third, the ALJ found Dr. Ballasiotes did not consider the impact of

4  Plaintiff's substance use.  Tr. 24.  An ALJ may discount a medical opinion that

5  does not consider a claimant's ongoing substance abuse.  *Cothrell v. Berryhill*, 742

6  Fed. App'x 232, 236 (9th Cir. July 18, 2018) (unpublished opinion); *Chavez v.*

7  *Colvin*, No. 3:14-cv-01178-JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016)

8  (unpublished opinion).  Dr. Ballasiotes' opinion has a note at the bottom that states

9  the limitations contained in the opinion do not include limitations from current

10  alcohol or drug use.  Tr. 924.  However, Dr. Ballasiotes' opinion does not contain

11  an explanation regarding his familiarity with Plaintiff's substance use, her

12  improvement with sobriety, nor what diagnoses cause the limitations.  Given the

13  extent of substance abuse present in Plaintiff's history, the failure to provide any

14  discussion regarding the impact of such abuse on the opined limitations and

15  severity of the limitations was a germane reason to reject the opinion.

16          *2. Dr. Cline*

17          R.A. Cline, Psy.D., examined Plaintiff in June 2016.  Tr. 474-79.  She

18  diagnosed Plaintiff  with unspecified psychotic disorder, marijuana use disorder,

19  and PTSD.  Tr. 476.  She opined Plaintiff had no to mild limitations in

20  understanding, remembering, or persisting in tasks following very short and simple

ORDER - 21

instructions, learning new tasks, performing routine tasks without special

supervision, adapting to changes in a routine work setting, being aware of normal

hazards and taking appropriate precautions, and asking simple questions or taking

appropriate precautions; moderate limitations in understanding, remembering, and

persisting in tasks by following detailed instructions, performing activities within a

schedule and maintaining regular attendance, making simple work-related

decisions, and setting realistic goals and planning independently; and marked

limitations in communicating and performing effectively in a work setting,

maintaining appropriate behavior in a work setting, and completing a normal

workday/workweek without interruptions from psychologically-based symptoms.

Tr. 477.  She opined Plaintiff overall had a moderate severity rating.  *Id.*  She

stated it was unclear if Plaintiff's limitations were due to substance abuse.  Tr. 478.

The ALJ gave Dr. Cline's opinion partial weight.  Tr. 23.  As Dr. Cline's opinion

was contradicted by the opinions of Dr. Winfrey, Tr. 42, 45-46 and Rita Flanagan,

Ph.D., Tr. 100-01, she was required to give specific and legitimate reasons,

supported by substantial evidence to reject the opinion.  *See Bayliss*, 427 F.3d at

1216.

First, the ALJ noted that Dr. Cline had  reviewed only one medical record

before rendering her opinion,.  Tr. 23.  The extent to which a medical source is

"familiar with the other information in [the claimant's] case record" is relevant in

ORDER - 22

1    assessing the weight of that source's medical opinion.  *See* 20 C.F.R. §

2    416.927(c)(6).  The only record Dr. Cline reviewed was an assessment conducted

3    in 2011, five years prior to the alleged onset date.  Tr. 23, 713.  As such, Dr. Cline

4    lacked access to medical records indicating Plaintiff testified positive for

5    methamphetamine less than two months prior to Dr. Cline's examination, Tr. 495,

6    although Plaintiff reported at the examination she had tested positive for a drug 35

7    days prior, but she did "not know how this happened, or what she used, or what her

8    UA showed," Tr. 714.  Dr. Cline also lacked access to the additional records and

9    medical opinions that address Plaintiff's substance abuse, unlike Dr. Winfrey, who

10   had access to the entire record including records demonstrating improvement with

11   periods of sobriety.  This was a specific and legitimate reason, supported by

12   substantial evidence, to reject Dr. Cline's opinion.

13        The ALJ also noted that Dr. VanFossen found Dr. Cline's diagnoses of

14   cannabis use disorder and PTSD were not supported, and Dr. VanFossen stated

15   that Dr. Cline failing to diagnose any other substance use disorders appeared to be

16   an oversight, given Dr. Cline's statement that there is a rule out diagnosis of

17   substance induced psychotic disorder.  Tr. 24 (citing Tr. 719-20).  Further, any

18   error in rejecting Dr. Cline's opinion would be harmless as Dr. Cline did not render

19   an opinion as to whether Plaintiff's substance use is a material contributing factor

20

1  to her disability.  Tr. 707, *see Molina*, 674 F.3d at 1115.  Plaintiff is not entitled to

2  remand on these grounds.

3  **C. Plaintiff's Symptom Claims**

4       Plaintiff faults the ALJ for failing to rely on reasons that were clear and

5  convincing in discrediting her symptom claims.  ECF No. 14 at 18-20.  An ALJ

6  engages in a two-step analysis to determine whether to discount a claimant's

7  testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

8  "First, the ALJ must determine whether there is objective medical evidence of an

9  underlying impairment which could reasonably be expected to produce the pain or

10 other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

11 "The claimant is not required to show that [the claimant's] impairment could

12 reasonably be expected to cause the severity of the symptom [the claimant] has

13 alleged; [the claimant] need only show that it could reasonably have caused some

14 degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

15      Second, "[i]f the claimant meets the first test and there is no evidence of

16 malingering, the ALJ can only reject the claimant's testimony about the severity of

17 the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

18 rejection."  *Ghanim*, 763 F.3d at 1163.  General findings are insufficient; rather,

19 the ALJ must identify what symptom claims are being discounted and what

20 evidence undermines these claims.  *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v.*

ORDER - 24

1  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

2  explain why it discounted claimant's symptom claims)).  "The clear and

3  convincing [evidence] standard is the most demanding required in Social Security

4  cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

5  *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

6         Factors to be considered in evaluating the intensity, persistence, and limiting

7  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

8  duration, frequency, and intensity of pain or other symptoms; 3) factors that

9  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

10  side effects of any medication an individual takes or has taken to alleviate pain or

11  other symptoms; 5) treatment, other than medication, an individual receives or has

12  received for relief of pain or other symptoms; 6) any measures other than treatment

13  an individual uses or has used to relieve pain or other symptoms; and 7) any other

14  factors concerning an individual's functional limitations and restrictions due to

15  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §

16  416.929(c).  The ALJ is instructed to "consider all of the evidence in an

17  individual's record," to "determine how symptoms limit ability to perform work-

18  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

19         In the section finding Plaintiff's substance use is material to her disability,

20  the ALJ found Plaintiff "is credible concerning her testimony."  Tr. 22.  The ALJ

ORDER - 25

then found that Plaintiff's medically determinable impairments could reasonably

be expected to cause some of the alleged symptoms, but that if Plaintiff stopped

using substances, Plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms were not entirely consistent with the evidence.

Tr. 26.

### 1. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living are inconsistent with her

symptom complaints. *Id.* The ALJ may consider a claimant's activities that

undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

200). If a claimant can spend a substantial part of the day engaged in pursuits

involving the performance of exertional or non-exertional functions, the ALJ may

find these activities inconsistent with the reported disabling symptoms. *Fair v.*

*Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Molina*, 674 F.3d at 1113. "While a

claimant need not vegetate in a dark room in order to be eligible for benefits, the

ALJ may discount a claimant's symptom claims when the claimant reports

participation in everyday activities indicating capacities that are transferable to a

work setting" or when activities "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1112-13.

The ALJ found Plaintiff's reported activities of educating herself on the

computer, walking her dog, creating music with friends, and attending church were

ORDER - 26

1  inconsistent with her symptom complaints.  Tr. 26.  Plaintiff argues the ALJ erred

2  as the listed activities were reported as interests while she was in an inpatient

3  psychiatric facility.  ECF No. 14 at 19.  However, the ALJ also found Plaintiff's

4  work at a farmer's market was inconsistent with her reported difficulty engaging

5  with others.  Tr. 26.  The medical records state Plaintiff assisted a friend at a

6  market on multiple occasions, and it was a goal for Plaintiff to go to a farmer's

7  market to help a friend four times per month.  Tr. 604, 608, 617, 626, 634.  The

8  ALJ also noted the third-party function report indicated Plaintiff can cook daily,

9  when not in a manic state, and she can clean, handle laundry, and travel to the

10  store.  Tr. 27 (citing Tr. 303-10).  While Plaintiff contends the noted activities were

11  only interests that she was not participating in, ECF No. 14 at 19, the third-party

12  function report also indicates Plaintiff listens to music, uses the computer, engages

13  in coloring, painting, bedazzling clothing, and communicating with others through

14  texting on a daily basis, she has no problems getting along with family, friends, or

15  others, and she goes outside two to three times per week, including going to

16  Goodwill and the grocery store, although she does not like going anywhere alone.

17  Tr. 304, 306, 308.

18      On this record, the ALJ reasonably concluded that Plaintiff's activities of

19  daily living were inconsistent with her symptom claims.  This finding is supported

20

ORDER - 27

1  by substantial evidence and was a clear and convincing reason to discount

2  Plaintiff's symptom complaints.

3      *2. Objective Medical Evidence*

4      The ALJ found the objective medical evidence did not support Plaintiff's

5  symptom complaints.  Tr. 26-27.  An ALJ may not discredit a claimant's pain

6  testimony and deny benefits solely because the subjective complaints alleged is not

7  supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 856

8  (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*,

9  885 F.2d at 601.  Medical evidence is a relevant factor, however, in determining

10  the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261

11  F.3d at 857; 20 C.F.R. § 416.929I(2).  Minimal objective evidence is a factor

12  which may be relied upon in discrediting a claimant's testimony, although it may

13  not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

14      While Plaintiff alleges significant limitations due to her mental health

15  symptoms, the ALJ noted that while Plaintiff had some abnormalities on

16  examination, Plaintiff was observed as cooperative, with normal mood, affect, eye

17  contact, speech, thoughts, cognitive functioning, memory, attention, and

18  concentration on multiple occasions.  Tr. 26-27 (citing, e.g., Tr. 523, 622, 633,

19  638).  The ALJ also gave great weight to the opinion of Dr. Winfrey, Tr. 22, who

20  supported her opinion with references to the record that demonstrated Plaintiff's

ORDER - 28

symptoms are largely related to her substance abuse, such as being placed in inpatient care due to symptoms that manifested during active substance abuse, Tr. 48, and showed improvement with sobriety, Tr. 50.

On this record, the ALJ reasonably concluded that the objective evidence was inconsistent with Plaintiff's symptom claims. This finding is supported by substantial evidence and was a clear and convincing reason, along with the other reason offered, to discount Plaintiff's symptom complaints. Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 29

1    The District Court Executive is directed to file this Order, provide copies to

2    counsel, and **CLOSE THE FILE**.

3    DATED December 4, 2020.

4    _s/Mary K. Dimke_
      MARY K. DIMKE

5    UNITED STATES MAGISTRATE JUDGE

ORDER - 30